The award of the Industrial Board was supported by competent evidence, and the superior court erred in sustaining the appeal and setting the award aside.
 DECIDED NOVEMBER 20, 1942. REHEARING DENIED DECEMBER 18, 1942. *Page 632 
Earl Q. Wilbanks was injured by an accident while in the employ of the Georgia Talc Company, on December 16, 1937. Compensation was paid him for thirty-nine weeks under an agreement. Certain medical expenses were paid by the employer and the insurance carrier, the Bituminous Casualty Corporation. At the request of the carrier a hearing was had before Director Tucker of the Industrial Board on January 17, 1939, for the purpose of determining whether the claimant was entitled to receive compensation in addition to that already paid him under the agreement. The carrier contended that the claimant had recovered from the injuries caused by the accident and was able to engage in competitive labor. The claimant, who was a laborer and had been employed by the employer as such, contended that he was unable, on account of his injuries, to do manual work and to earn a living. The director, on February 13, 1939, rendered an award denying additional compensation to the claimant. The director found that the claimant, since his injury, had had a change in condition for the better, and that while he was suffering injuries as the result of the accident, such as a loss of sensation in the right side of his face and a partial loss of hearing in one of his ears, his condition was not disabling, and that he was physically able to return to his regular employment to perform the usual duties of competitive labor. The director found that a partial loss of hearing in one ear was not compensable under the Code, § 114-406, which provides for compensation only when there is a total loss of hearing in both ears. The full board affirmed the award of Director Tucker. The claimant appealed to the superior court which sustained the appeal and held as a matter of law that there was no evidence on which the Industrial Board could base a finding that the claimant was then able to perform his usual work, and that the burden being on the employer to show a change in condition the evidence before the Industrial Board had wholly failed to prove that there was any change in the condition of the claimant between the time of the injury and the date of the hearing. The superior court set aside the award of the Industrial Board. The employer and insurance carrier excepted to this judgment. This court affirmed the judgment of the superior court and held that it appeared "Under the *Page 633 
undisputed evidence, that the insurance carrier and employer failed to carry the burden of showing that the claimant had recovered from the disability for which compensation had been paid to him by the carrier under a previous agreement between the claimant and the insurance carrier, and that it is conclusive that the claimant, at the time the insurance carrier, ceased the payment of compensation to him, and at the time of the hearing, was suffering some disability," and also held that it appeared "from the evidence in the case, and without contradicting the testimony of the physician for the insurance carrier, that the claimant's earning capacity as a `day laborer' was impaired at the time compensation payments ceased and at the time of the hearing." Bituminous Casualty Cor. v. Wilbanks, 64 Ga. App. 232
(12 S.E.2d 479).
The insurance carrier afterwards, on April 28, 1941, caused the claimant to be examined by Dr. A. M. Collingsworth of Atlanta, and as a result of this examination applied to the Industrial Board for a review of the previous award on the ground of a change in condition as provided in Code, § 114-709. On July 2, 1941, the requested hearing was had at Chatsworth, Georgia, before Director Monroe. Dr. Collingsworth testified for the insurance carrier in substance that he had examined the claimant thoroughly and had found some conditions existing as the result of the injury in 1937, none of which should, in his opinion, prevent the claimant from engaging in manual labor. He testified that there was no reason why the claimant should not return to work, and that he did not see anything from his examination that would disable the claimant from doing manual labor. This witness testified as follows: "I believe Mr. Wilbanks has sufficiently recovered from his injuries to where he was definitely able to go back to work as of the time I saw him. I can make no statement to any condition or time prior to that. If he wants to work, I see no reason why he should not. He is strong physically and I think he is definitely able to work." The doctor testified that he found about a 25 per cent. disability in the hearing of the claimant's right ear; that he examined the claimant's mouth and found a number of decayed teeth and chronic infection, and also pyorrhea at the gums.
Dr. E. H. Steele testified in behalf of the claimant that he had attended the claimant after the accident for some time and that he has seen him "all along," since then. This doctor testified that *Page 634 
if there is any change in the condition of the claimant over the past two years or thirty months he can not tell it; that he doesn't think the claimant has regained his "equilibrium;" that he has seen the claimant walking the street when the claimant did not know he was looking at him and the claimant wobbles when he walks. In answer to the question, "What in your opinion is Mr. Wilbanks able to do in the way of competitive labor?" this doctor testified: "I don't think he is able because he can't even get out on the farm and work. He is knocked out. He gets nervous and goes all to pieces when he tries to do anything."
W. B. Robinson, an attorney at law, and who had also worked for the Georgia Talc Company as general manager, testified on behalf of the claimant that he had worked the claimant as an employee of the talc company; that the claimant was a strong and stout man and could do a heavy class of labor and work; that the claimant fired a boiler for the witness and was a good worker; that he has had occasion to observe the claimant since his accident and injury; that there is a difference in the condition of the claimant before and since the injury; that there is "something gone in Mr. Wilbanks;" that he is not the same man he used to know; that he has observed him and the claimant walked like he was intoxicated; that there were times when he would walk worse than at other times; that he is acquainted with the type of work the claimant had to do at the time of his injury and it is the opinion of the witness that he can not now do that type of work.
Dr. Steele, recalled, testified that he would not think 25 per cent. impairment in the hearing of one ear would handicap a day laborer from doing his work.
The claimant testified that he had not recovered from his injury and was not able to do any kind of work that required manual labor. His testimony was substantially the same as that given on the other hearing, which testimony is referred to in the report of this case in 64 Ga. App. 232, supra. He testified that he could not hold out at any kind of work that required exertion, and that all of his present inability to work was due to the injuries received from the accident; that the Georgia Talc Company had not offered him any employment and that he had suggested to the management of the company that they might find some work that he could do; that he still has the symptoms that he had, there has *Page 635 
been no improvement in his condition; that he still believes he is totally disabled and if he wasn't totally disabled he would go to work if he could get a job.
There was introduced a statement of H. L. Erwin, M. D., dated July 7, 1941, addressed to the Industrial Board and stamped received by that board on July 10, 1941, as follows: "It is my opinion that Earl Q. Wilbanks is presently totally disabled to do competitive labor. This opinion is based on the fact that I have from time to time observed and examined him since the accident which caused his disability. He had received a terrific blow on the right side of his face and I was one of the first physicians who administered treatment to Mr. Wilbanks here at the hospital where he was brought immediately after the accident. If a more detailed statement is desired, kindly advise me."
The director found as a fact that the claimant has had a change in condition and is at the present time able to pursue competitive labor. The director based his finding on the testimony of Dr. Collingsworth and on his observation of the claimant at the time of the hearing. The director found that the only thing different with the claimant from any other able-bodied man was a slight paralysis of the right side of his face. The director stated in the award: "It was the opinion of the director from this observation alone that the man was able to pursue competitive labor." The single director awarded compensation for a 10 per cent. loss of vision and ptosis of the right eye, and found that the claimant is at the present time suffering no industrial handicap and has no permanent disability except such loss of the vision in the right eye. The claimant thereupon appealed to the superior court of Murray County from the award of the full board. The superior court sustained the appeal and rendered the following judgment: "After hearing upon the above appeal, it is considered, ordered, and adjudged by the court, that the judgment of the Industrial Commission be reversed, for the reason that there is no evidence to sustain the finding of the commission of a change in condition of appellant. The court holds that incapacity for work resulting from an injury is total, not only so long as the injured employee is unable to do any work of any character, but also while he remains unable, as a result of his injury, either to resume his former occupation or to procure remunerative employment of a different occupation *Page 636 
suitable to his impaired capacity. The court is further of the opinion that before any apparent capacity to work can operate either to suspend compensation or to terminate appellant's period of total incapacity, it must be made to appear that employment has been procured for such injured party and that he has unjustifiably refused to accept it. From the record in this case it appears that the employer failed to prove that the employee could obtain employment for which he was physically fitted, or that he had refused such employment. For all of these reasons, the judgment of the Industrial Board in said case is reversed and set aside."
The Code, § 114-709, provides that on a change in condition of the claimant the Industrial Board may render an award increasing, diminishing, or ending the payment of compensation, as the case may be. The superior court on appeal from the award of the Industrial Board is without authority to reverse and set it aside where it is supported by any competent evidence. The award of the single director, which was affirmed by the full board, was supported by the testimony of Dr. Collingsworth who made a physical examination of the claimant and found, as he testified, that the claimant was not disabled but was able to resume the performance of ordinary manual labor. The director found that the claimant was a strong and healthy-looking man and had had a change in condition and was at the present time able to pursue competitive labor. The director stated that it was his opinion, based upon observation of the claimant alone, that the claimant was able to pursue competitive labor. The director has a right to consider the physical appearance of a claimant at the hearing in determining whether there has been a change in condition.Abercrombie v. American Casualty Co., 41 Ga. App. 729
(154 S.E. 459). While the evidence was conflicting it authorized the finding by the director and the full board. The superior court erred in sustaining the appeal and in reversing the award of the Industrial Board.
The question of the offer and refusal of employment by the claimant was not presented by the evidence. The ruling therefore is not in conflict with Austin Bros. Bridge Co. v. Whitmire,
31 Ga. *Page 637 App. 560 (121 S.E. 345); and Maryland Casualty Co. v.Wheeler, 43 Ga. App. 382 (159 S.E. 139).
Judgment reversed. Sutton and Felton, JJ., concur.